IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GILBERT JAMES<br>SUSAN CHANDLER<br>THERESA HOOD<br>ADEDAYO PETERSON<br>JOYCE RIDGLEY, *on behalf of*<br>*themselves and all others similarly situated*<br><br>   Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>   SERVE:   David N. Anthony<br>            Troutman Sanders LLP<br>            1001 Haxall Point<br>            Richmond, VA 23219<br><br>   Defendant. | FILED<br>DEC 26 2012<br>CLERK, U.S. DISTRICT COURT<br>RICHMOND, VA<br><br>CIVIL ACTION NO.<br><br>3:12cv902 |

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Gilbert James ("James"), Susan Chandler ("Chandler"), Theresa Hood ("Hood"), Adedayo Peterson ("Peterson"), and Joyce Ridgley ("Ridgley"), collectively "the Plaintiffs", on behalf of themselves and all others similarly situated, by counsel, and as for their Complaint against the Defendant, they allege as follows:

### PRELIMINARY STATEMENT

1. This is an action for statutory, and punitive damages, costs, and attorneys' fees brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA").

### JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

3. The Plaintiff are all natural people residing in Virginia, and at all times relevant to this Complaint, each was a "consumer" as defined by the FCRA.

4. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation doing business in Virginia. At all times relevant to this Complaint, it was a "consumer reporting agency" as defined by the FCRA at 15 U.S.C. § 1681a(f).

## STATEMENT OF FACTS

### *Defendant's Specific Conduct Regarding Gilbert James*

5. In late 2008, Plaintiff James learned that various credit card accounts had been opened in his name without his knowledge or consent. Plaintiff James had been the victim of identity theft.

6. From approximately 2009 through early 2011, Plaintiff James began notifying the various credit card companies of the identity theft and resolved the issue with all of the various companies except for one credit card account with Capital One.

7. Capital One thereafter charged off the debt and sold it to Midland Funding, LLC ("Midland"). Midland subsequently obtained a judgment against Plaintiff James for the account.

8. Plaintiff James soon learned that the Capital One and Midland accounts, including the judgment Midland obtained against him, were being reported on his credit report.

9. The Midland judgment was eventually vacated.

10. On or around June 21, 2011, Plaintiff James mailed a written dispute to the Defendant regarding the Midland account and judgment. In this letter, Plaintiff James provided his full name, address, telephone number, date of birth, and the last four digits of his social security number.

11. The Defendant received this dispute letter on June 28, 2011.

12. On or around July 4, 2011, the Defendant mailed a letter to Plaintiff James refusing to investigate his dispute, claiming that James did not provide sufficient identification information. A copy of this letter is attached to this Complaint as Exhibit "A".

### *Defendant's Specific Conduct Regarding Susan Chandler*

13. On or around September 11, 2012, Plaintiff Chandler mailed a written dispute to the Defendant regarding a Midland account that was being incorrectly reported on her credit report and a judgment that was inaccurately being reported as outstanding. In this letter, Plaintiff Chandler provided her full name, address, telephone number, date of birth, and the last four digits of her social security number.

14. The Defendant received this dispute letter on September 17, 2012.

15. On or around September 20, 2012, the Defendant mailed a letter to Plaintiff Chandler refusing to investigate her dispute, claiming that she did not provide sufficient identification information. A copy of this letter is attached to this Complaint as Exhibit "B".

### *Defendant's Specific Conduct Regarding Theresa Hood*

16. On or around November 27, 2012, Plaintiff Hood mailed a written dispute to the Defendant regarding a Midland account that was being incorrectly reported on her credit report and a judgment that was inaccurately being reported as outstanding. In this letter, Plaintiff Hood provided her full name, address, telephone number, date of birth, and the last four digits of her social security number.

17. The Defendant received this dispute letter on December 4, 2012.

18. On or around December 11, 2012, the Defendant mailed a letter to Plaintiff Hood refusing to investigate her dispute, claiming that she did not provide sufficient identification

information. A copy of this letter is attached to this Complaint as Exhibit "C".

### *Defendant's Specific Conduct Regarding Adedayo Peterson*

19. On or around November 30, 2012, Plaintiff Peterson mailed a written dispute to the Defendant regarding two Midland accounts that were being incorrectly reported on her credit report and a judgment that was inaccurately being reported as outstanding. In this letter, Plaintiff Peterson provided her full name, address, telephone number, date of birth, and the last four digits of her social security number.

20. The Defendant received this dispute letter on December 3, 2012.

21. On or around December 6, 2012, the Defendant mailed a letter to Plaintiff Peterson refusing to investigate her dispute, claiming that she did not provide sufficient identification information. A copy of this letter is attached to this Complaint as Exhibit "D".

### *Defendant's Specific Conduct Regarding Joyce Ridgley*

22. On or around November 27, 2012, Plaintiff Ridgley mailed a written dispute to the Defendant regarding a Midland account that was being incorrectly reported on her credit report and a judgment that was inaccurately being reported as outstanding. In this letter, Plaintiff Ridgley provided her full name, address, telephone number, date of birth, and the last four digits of her social security number.

23. The Defendant received this dispute letter on December 4, 2012.

24. On or around December 11, 2012, the Defendant mailed a letter to Plaintiff Ridgley refusing to investigate her dispute, claiming that she did not provide sufficient identification information. A copy of this letter is attached to this Complaint as Exhibit "E".

### *Facts Common to All Plaintiffs*

25. Experian has been sued repeatedly for refusing to investigate disputes by

consumers, claiming that the consumer did not provide sufficient identification information, including within this District and Division. *See, e.g., Schneider v. Experian Information Solutions, Inc.,* 3:05-cv-717-REP; *Duff v. Experian Information Solutions, Inc.,* 3:05-cv-829-REP; *Scroggins v. Experian Information Solutions, Inc.,* 3:07-cv-552-REP; *Restifo v. Experian Information Solutions, Inc.,* 3:08-cv-509-REP.

26. Experian does not make money by processing disputes from consumers - in fact, this is purely an expense for Experian. As a result, Experian now processes consumer disputes in Chile for a small fraction of the amount that Experian previously spent on disputes when they were processed in the United States. It is in Experian's interest to reject disputes for any possible reason, as doing so saves money.

27. For example, Experian informed the Plaintiffs that it would not process their disputes unless they provided significant information and documentation, including:

    a) full name, including middle initial (and generation such as Jr. Sr., II, III);
    b) previous addresses for the past two years;
    c) Social Security number;
    d) date of birth;
    e) a copy of a government issued identification card, such as a driver's license, state, or military identification card; and
    f) a copy of a utility bill, bank or insurance statement, etc.

28. Notwithstanding these onerous requirements placed on consumers - for which no justification is found in the FCRA - the Defendant <u>sells</u> credit reports to its banking industry customers if those customers provide as little as a consumer's first name, last name and any previous address.

29. Experian sells credit reports to its banking industry customers and debt collectors even when the customer does not provide a social security number for the subject of the requested report.

30. Additionally, Experian sells credit reports to its banking industry customers and debt collectors even when the customer does not provide a date of birth for the subject of the requested report.

31. Experian does not require that these customers provide a copy of a government issued identification card for the subject of the requested report.

32. Furthermore, Experian does not require that these customers provide a copy of a utility bill for the subject of the requested report.

33. Upon information and belief, these hurdles created by Experian are designed to reduce the number of disputes that its employees (and now foreign agents in Chile) must process.

34. Experian makes money by selling credit reports.

35. However, Experian does not make money by processing disputes for consumers complaining about inaccurate information in their Experian credit files.

36. Therefore, according to Experian's unjustifiable and onerous requirements, a consumer who lives in a rural area and does not have access to a photocopier to make a copy of a government issued identification card and/or a utility statement could not have his or her dispute processed at all.

37. Similarly, a consumer who does not possess government issued identification or does not have a utility bill, bank statement, or insurance statement could not have his or her dispute processed.

## CLASS ACTION ALLEGATIONS

38. **The FCRA Class.** Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action individually and on behalf of a class initially defined as follows ("the Class"):

All natural persons residing in the United States who were the subject of a

consumer report prepared by Defendant within 2 years prior to the filing of this complaint for whom Defendant refused to conduct a reinvestigation of a dispute until and unless the consumer provided photocopies of two forms of identification or a full social security number with his dispute.

39. **Numerosity.** The class members are so numerous that joinder of all is impractical. Plaintiffs' counsel is in possession of a number of letters received by consumers that are substantially similar to those that the Defendant mailed to the Plaintiffs. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

40. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had a right to request consumers' full social security numbers or other identifying information before processing their disputes; (b) whether Defendant actually required a social security number or more identifying information in order to locate the consumers' files; (c) whether Defendant failed to conduct a re-investigation of consumers' disputes; (d) whether Defendant failed to provide notice of consumers' disputes to the furnishers of the disputed information; and (e) whether the Defendant acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

41. **Typicality.** Plaintiffs' claims are typical of the claims of each Class member and all are based on the same facts and legal theories. Upon information and belief, Defendant sent the same or substantially the same standardized letters to consumers across all states located within the United States during the full class period. For purposes of class certification only, Plaintiffs seek only statutory and punitive damages. Plaintiffs would seek individual or actual

7

damages only if class certification is denied. In addition, Plaintiffs are entitled to the relief under the same causes of action as the other members of the Class.

42. **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative class and have accepted such responsibilities.

43. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a. As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

    b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers for whom Defendant refused to process disputes in violation of the requirements of the FCRA are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual

litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

### COUNT ONE:
### (Violation of 15 U.S.C. § 1681i(a)(1))
### CLASS CLAIM

44. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

45. Defendant violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently update the information in the file.

46. As a result of this conduct, the Plaintiffs suffered a delay in the processing of their dispute.

47. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

48. The Plaintiffs and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### COUNT TWO:
### (Violation of 15 U.S.C. § 1681i(a)(2))
### CLASS CLAIM

49. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

50. Defendant violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to provide notice of the Plaintiffs' disputes to the furnishers of the disputed

information.

51. As a result of this conduct, the Plaintiffs suffered a delay in the processing of their dispute.

52. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

53. The Plaintiffs and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT THREE:
### (Violation of 15 U.S.C. § 1681i(a)(4))
### CLASS CLAIM

54. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

55. Defendant violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiffs' communications.

56. As a result of this conduct, the Plaintiffs suffered a delay in the processing of their dispute.

57. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

58. The Plaintiffs and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move

for class certification and for statutory, and punitive damages against the Defendant; for their attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**GILBERT JAMES,**
**SUSAN CHANDLER,**
**THERESA HOOD,**
**ADEDAYO PETERSON,** and
**JOYCE RIDGLEY** *on behalf of themselves and all others similarly situated*

By: _____
Of Counsel

Matthew J. Erausquin, VSB No. 65434
Janelle E. Mason, VSB No. 82389
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: (703) 273-7770
Fax: (888) 892-3512
matt@clalegal.com
janelle@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB No. 37523
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
lenbennett@clalegal.com