**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| GILBERT JAMES ) <br> SUSAN CHANDLER ) <br> THERESA HOOD ) <br> ADEDAYO PETERSON ) <br> JOYCE RIDGLEY, on behalf of ) <br> themselves and all others similarly situated, ) <br>  ) <br>  Plaintiffs, ) <br>  ) <br>  ) <br> v. ) <br>  ) <br> EXPERIAN INFORMATION SOLUTIONS, INC., ) <br>  ) <br>  Defendant. ) <br>  ) <br>  ) | Civil Action No. 3:12-cv-902-REP <br><br> Judge:  The Hon. Robert E. Payne |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO
28 U.S.C. § 1404(a) OR, IN THE ALTERNATIVE, TO REASSIGN CASE**

Defendant Experian Information Solutions, Inc. ("Experian") respectfully submits this

memorandum in support of its Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404(a) Or,

In The Alternative, To Reassign Case.

**BACKGROUND**

On December 26, 2012, Plaintiffs Gilbert James, Susan Chandler, Theresa Hood,

Adedayo Peterson, and Joyce Ridgley (collectively, "Plaintiffs") filed their Complaint against

Experian in the Richmond Division of the United States District Court for the Eastern District of

Virginia.[1]  Plaintiffs allege that Experian violated the federal Fair Credit Reporting Act, 15

U.S.C. § 1681, *et seq.* ("FCRA"), by "failing to conduct . . . reasonable reinvestigation[s]" of

---

[1] Plaintiffs did not serve Experian with their Complaint until January 15, 2013.  [*See* Ex.
A (affidavit of service).]

Plaintiffs' respective disputes, in violation of 15 U.S.C. § 1681i(a)(1); "failing to provide notice

of . . . Plaintiffs' disputes to the furnishers of the disputed information," in violation of 15 U.S.C.

§ 1681i(a)(2); and "failing to review and consider all relevant information that it received in

Plaintiffs' communications," in violation of 15 U.S.C. § 1681i(a)(4).  (Dkt. No. 1, at ¶¶ 45, 50,

55.)  Plaintiffs purport to represent the following class:

> All natural persons residing in the United States who were the
> subject of a consumer report prepared by Defendant within 2 years
> prior to filing of this complaint for whom Defendant refused to
> conduct a reinvestigation of a dispute until and unless the
> consumer provided photocopies of two forms of identification or a
> full social security number with his dispute.

(*Id.* ¶ 38.)

Even assuming that all facts properly pleaded by Plaintiffs are true, Plaintiffs' claims

have virtually no connection to this Division.  Rather, the Northern District of Texas, the

jurisdiction close to all of Experian's documents and potential witnesses, is the most convenient

forum, not only for Experian but also, due to its geographic centrality, for the national class that

Plaintiffs purport to represent.  Moreover, Plaintiffs' counsel, by stating that this case is related

to a prior case over which this Honorable Court presided, has engaged in forum shopping, and

this Court should not allow them to reap the benefits of their misstatements.  Accordingly, in

light of all relevant factors (and in the interest of preventing Plaintiffs' counsel from

manipulating this Court's case assignment process), the Court should either transfer this case to

the Northern District of Texas, or find that it should be reassigned to another Judge in the

Richmond Division.

## I.   VIRTUALLY NO RELEVANT ENTITY OR INDIVIDUAL HAS A CONNECTION TO THIS DIVISION.

With the exception of two named putative class plaintiffs—Gilbert James and Susan

Chandler—the Richmond Division has virtually no connection to Plaintiffs' claims.  Of the five

named plaintiffs, two—Theresa Hood and Joyce Ridgley—reside in the *Western* District of

Virginia.  (*See* D.E. 1, Exs. C, E.)  Of the three residing in the Eastern District, one—Adedayo

Peterson—resides in the Newport News Division, *not* the Richmond Division.  (*See id.* Ex. D.)

Because Plaintiffs' documents—which they have yet to produce at this very early stage in the

litigation—are all likely held by Plaintiffs themselves, most are presumably located outside of

the Richmond Division.  And of course, since these named Plaintiffs purport to represent a

national class, it is far from clear that the Richmond Division has anything beyond the most

attenuated connection to the universe of potential plaintiffs.  Nothing in Plaintiffs' Complaint

suggests anything to the contrary.

For its part, Experian has no relevant connection to the Richmond Division.  It is not

headquartered in Virginia, nor does it maintain its principal place of business in Virginia.  (*Cf.*

D.E. 1, ¶ 3 (noting that Experian "is a foreign corporation doing business in Virginia").)

Experian, rather, is an Ohio corporation with its headquarters and principal place of business in

Costa Mesa, California.  (*See* Iwanski Aff. ¶ 4 (Ex. B).)  Critically, Experian's National

Consumer Assistance Center ("NCAC")—the office that handles nearly all consumer disputes,

including those giving rise to Plaintiffs' allegations—is located in Allen, Texas.  (*See id.* ¶ 5.)  In

other words, Experian's likely witnesses will be located either in Allen, Texas or at Experian's

Costa Mesa, California headquarters.  Similarly, all conceivably relevant documents are located

at Experian's NCAC, which is nowhere near the Richmond Division.  And while Experian does

engage in business in the Richmond Division, that business is irrelevant to Plaintiffs' causes of

action, and does not render this Division either convenient or appropriate.

Moreover, each of the named Plaintiffs' allegations revolves around accounts reported on

their respective credit reports by Midland.  (*See* D.E. 1, ¶¶ 7–10, 13, 16, 19, 22.)  Midland's

principal place of business, however, is in San Diego, California. (*See generally* Ex. C (Midland Funding, LLC Company Report).)[2] Experian is not aware of any significant connection between Midland and the Richmond Division. Nothing in Plaintiffs' complaint suggests anything to the contrary.

Finally, virtually all the significant operative events alleged in Plaintiffs' Complaint occurred outside of the Richmond Division. The majority of the allegations in Plaintiffs' Complaint turn on their communications with Experian and with non-party Midland. (*See* D.E. 1, ¶¶ 5–37.) Because only two of the named Plaintiffs reside in the Richmond Division, and because the relevant centers of operation for both Experian and Midland are outside of Virginia, virtually none of the relevant communications took place in the Richmond Division.

Simply put, the Richmond Division has no real connection with this action other than being Plaintiffs' Virginia-based counsel's preferred division. *See infra* pgs 4–7, 17–19. In fact, the only jurisdiction that would serve the interests of justice and party convenience is the Northern District of Texas, which is near Experian's NCAC.

## II. PLAINTIFFS' COUNSEL HAS ENGAGED IN IMPERMISSIBLE FORUM SHOPPING.

Upon filing the instant Complaint, Plaintiffs' counsel listed *James v. Encore Capital Group, Inc., et al.*, 3:11-cv-221 (E.D. Va.), a prior case over which this Honorable Court presided, as a "related case." (*See* D.E. 1, Attachment 6 (civil cover sheet).) By doing so, Plaintiffs' counsel ensured that this Court would preside over Plaintiffs' instant putative class action. For a host of reasons, the listing of *James v. Encore Capital Group, Inc.* as a related case was improper, misleading, and strongly indicative of "judge shopping." To prevent Plaintiffs'

_____

[2] Experian acknowledges that non-party entity Capital One Financial Corp.'s principal place of business is in McLean, Virginia, within the Alexandria Division of the Eastern District of Virginia. Capital One, however, is only tangentially connected to the claims of one putative class plaintiff. (*See* D.E. 1, ¶¶ 6–7 (discussing "Defendant's Specific Conduct Regarding Gilbert James").)

counsel the benefit of their forum shopping, this case should be reassigned to another Judge in

the Richmond Division, in the event that the Court denies Experian's requested transfer.

With the exception of a common named plaintiff (and common counsel for the plaintiffs

in both actions), *James v. Encore Capital Group, Inc.* is distinctly *unrelated* to the instant case.

In *James v. Encore Capital Group, Inc.*, Plaintiff Gilbert James sued several entities for

purported violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*; the

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*; and related torts

under Virginia state law based upon allegedly improper debt collection practices.  (*See* Ex. D

(Compl., *James v. Encore Capital Group, Inc., et al.*, 3:11-cv-221 (E.D. Va.)).)  In that case,

Plaintiff Gilbert James brought one FCRA claim against Equifax Information Services, LLC,

alleging that Equifax—and not Experian—violated § 1681e(b).[3]  In his amended complaint,

Plaintiff Gilbert James subsequently brought another FCRA claim against co-defendant Midland

Credit Management, alleging that it violated § 1681s-2(b).

Section 1681e(b), however, addresses a credit reporting agency's responsibility to

*prepare* consumer reports using reasonable procedures to assure maximum possible accuracy,

and § 1681e(b) addresses an individual's responsibility *to refrain* from furnishing inaccurate

information to a credit reporting agency.  Neither have anything to do with the *reinvestigation*

related claims based on § 1681i(a) that Plaintiffs bring here.  Rather than accuracy in the

*preparation* of consumer credit reports and the responsibility to *refrain* from furnishing

inaccurate information to credit reporting agencies, Plaintiffs' claims in the instant case turn

exclusively on whether Experian took the necessary steps to *correct* Plaintiffs' credit reports

*after* Plaintiffs allegedly mailed dispute letters to Experian.  (*See* D.E. 1, at ¶¶ 5–12.)  Put simply,

---

[3]  Plaintiff Gilbert James dismissed the action against Equifax approximately three-and-a-half months after filing his complaint.  (*See* Ex. E (Stipulation Of Dismissal, *James v. Encore Capital Group, Inc., et al.*, 3:11-cv-221 (E.D. Va.)).)

there is absolutely no relevant factual or legal overlap that has any bearing on the claims brought in *James v. Encore Capital Group, Inc.* and those brought here.

Moreover, a case is only "related" if the prior case is open, as opposed to closed, settled, or dismissed. Plaintiffs, however, served Experian with their putative class action complaint approximately *six months* after *James v. Encore Capital Group, Inc.*, closed on July 2, 2012. (Ex. F (*James v. Encore Capital Group, Inc.* Docket Sheet).) Given the fact that Plaintiffs' counsel was also the attorney of record in *James v. Encore Capital Group, Inc.*, it is unlikely that this erroneous related case designation resulted from an oversight.

Finally, the intentional nature of this related case designation is made more evident by the fact that Plaintiffs' counsel *ignored* another case—one in which they also served as the attorney of record—that involved a separate named Plaintiff in the instant action, but was litigated in a forum that apparently was not as favorable.[4] Plaintiff Joyce Ridgley was also a named plaintiff in *Boone, et al. v. Encore Capital Group, Inc.*, 4:11-cv-164 (E.D. Va.), a case in the Newport News Division of the Eastern District of Virginia that was presided over by Judge Doumar and originally filed in state court. Incidentally, *Boone, et al. v. Encore Capital Group, Inc.* and *James v. Encore Capital Group, Inc.* have a degree of factual overlap—in both cases, the plaintiffs accused Midland of improper debt collection practices. (*Compare* Ex. D (Compl. ¶¶ 8–56, *James v. Encore Capital Group, Inc., et al.*, 3:11-cv-221 (E.D. Va.)) with Ex. G (Compl. ¶¶ 6–76, *Boone, et al. v. Encore Capital Group, Inc.*, 4:11-cv-164 (E.D. Va.)).)

By ignoring *Boone, et al. v. Encore Capital Group, Inc.* and listing as related *James v. Encore Capital Group, Inc.*, Plaintiffs' counsel misled the Clerk's Office, causing it to assign

---

[4] In fact, upon removal of *Boone, et al. v. Encore Capital Group, Inc.* to federal court, Plaintiffs' counsel moved to transfer the case to the Richmond Division and to consolidate it with *Adkins, et al. v. Encore Capital Group, Inc., et al.*, 3:11-cv-334 (E.D. Va.), a case in which Judge Spencer was the presiding judge. *Boone, et al. v. Encore Capital Group, Inc.* was dismissed with prejudice by agreement of the parties on November 16, 2012, prior to resolution of the transfer motion.

this case to this Honorable Court.  However, since *Boone, et al. v. Encore Capital Group, Inc.* closed on November 16, 2012, and *James v. Encore Capital Group, Inc.* closed four months earlier, on July 2, 2012, *neither* are related to the instant case, and the Clerk's Office should have assigned this case to a judge in accordance with its typical procedure.

The fact that Plaintiffs' counsel chose to list one case as "related" to the exclusion of another is strongly indicative of willful forum shopping.  The intentionality of this selection is made even more apparent by the fact that *James v. Encore Capital Group, Inc.* closed *four months earlier* than *Boone, et al. v. Encore Capital Group, Inc.*  (*Compare* Ex. F (*James v. Encore Capital Group, Inc.* Docket Sheet) *with* Ex. H (*Boone, et al. v. Encore Capital Group, Inc.* Docket Sheet).)  This Court should not allow Plaintiffs' counsel to benefit from this erroneous related case designation.  Accordingly, should this Court deny Experian's motion to transfer, Experian respectfully requests that this matter be reassigned to a different judge in the Division.

## ARGUMENT

## I.     THIS CASE SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS.

District courts have discretion to transfer an action under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses" and "in the interest of justice, . . . to any other district or division where it might have been brought."  The Court must first determine "whether the claims might originally have been brought in the transferee forum."  *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 631 (E.D. Va. 2006) (citing *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)).  Once it is clear that transfer is possible, the Court must "consider and balance" several relevant factors, including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the

availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

*Id.* at 631–32 (citing *Samsung Electronics Co., Ltd. v. Rambus, Inc.,* 386 F. Supp. 2d 708, 715

(E.D. Va. 2005)).  Of these, the principal factors to consider are "plaintiff's choice of forum,

witness convenience and access, party convenience, and the interest of justice."  *Koh,* 250 F.

Supp. 2d at 633.

The Court's decision "necessarily must turn on the particular facts of each case," and on

"whether or not on balance the litigation would more conveniently proceed and the interests of

justice be better served by transfer to a different forum."  *Byerson,* 467 F. Supp. 2d at 632 (citing

*Samsung,* 386 F. Supp. 2d at 715); *see also BHP Int'l Inv., Inc v. Online Exch., Inc.*, 105 F.

Supp. 2d 493, 498 (E.D. Va. 2000) (transferring case under § 1404(a) to a "more logical and

convenient forum"); *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp.

2d 689, 700 (E.D. Va. 2000) (transferring case under § 1404(a) to district where "many of the

operative facts actually arose," and "the clear weight of the documentary and testimonial

evidence" was located").  In this case, transfer to the Northern District of Texas is appropriate

because transfer would benefit the convenience of the parties and the witnesses, and it is also in

the interests of justice.  Transfer is particularly appropriate here because Plaintiffs' choice of

forum, which is usually entitled to substantial weight, should receive no deference from the

Court under the circumstances of this putative class action.  *See Byerson,* 467 F. Supp. 2d at 633

("In class actions, the named plaintiff's choice of forum is afforded little weight because in such

a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a

particular forum is best suited for the adjudication of the class' claim."); *see also Thomas v.*

*Accounts Receivable Management, Inc.*, No. 3:10-cv-221, 2010 WL 4340108, at *2 (E.D. Va.

Oct. 22, 2010) ("A plaintiff's choice of forum loses influence when the plaintiff chooses a forum with little relationship to the action.").

**A.     This Action Could Have Been Brought In The Northern District Of Texas.**

Plaintiffs cannot reasonably dispute that their claims could have been brought in the Northern District of Texas.  In this federal question case, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b).  Under 28 U.S.C. § 1391(d), "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."

As a nationwide credit reporting agency, Experian has significant contacts with the Northern District of Texas.  Thus, Experian can "reasonably anticipate being haled into court" in the Northern District of Texas.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Nothing more is required to confer general personal jurisdiction.  Accordingly, for purposes of § 1391(b), Experian is a resident of the Northern District of Texas, and this action could originally have been brought in that District.

**B.     Plaintiffs' Choice Of Forum Is Not Entitled To Deference.**

Although a plaintiff's choice of forum is "typically entitled to substantial weight," *Byerson*, 467 F. Supp. 2d at 633, "courts often give less weight to the plaintiff's choice of forum in class actions."  *Id.* (citing *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 405 (S.D.N.Y 1998)); *accord* 17 Moore's Fed. Practice—Civil 111.13[1][c][ii] (noting that in "class actions . . . , where putative class members may reside in many different states, the plaintiff's choice of forum is given less weight.")  Here, Plaintiffs' choice to file in the Richmond Division is "afforded little weight'" because Plaintiffs purport to represent a national class, and "there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is

best suited for the adjudication of the class' claim.'" *Id.* (citing *Eichenholtz v. Brennan*, 677 F. Supp. 198, 202 (S.D.N.Y 1988)); *see also Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."); *Owner-Operator Indep. Drivers Ass'n v. N. Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 824 n.3 (W.D. Va. 2005) ("[U]nder myriad case law . . . this proposition [of deference] is weakened considerably where there are hundreds of potential plaintiffs, such as in this class action."). Due to the geographic centrality of the Northern District of Texas, it is very likely that transferring this case to that jurisdiction will substantially increase the convenience for *all* interested parties—including the bulk of the class Plaintiffs purport to represent—beyond that which the Richmond Division could offer, as a venue in the middle of the country will certainly reduce travel for putative class members more so than one on the Atlantic Coast.

Moreover, it is well settled that "[a] plaintiff's choice of forum loses influence when the plaintiff chooses a forum with little relationship to the action." *Thomas*, 2010 WL 4340108, at *2. In other words, "if a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003). In fact, "if there is little connection between the claims and [the chosen forum], that would militate *against* a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Koh*, 250 F. Supp. 2d at 635; *see also* E.D. Va. Loc. Civ. R. 3(C) (requiring civil actions to be brought in the proper division).

Even assuming that all facts Plaintiffs allege in the Complaint are true, this case has virtually no connection to the Richmond Division. Only two of the five named Plaintiffs are residents of the Richmond Division. (*See* D.E. 1, Exs. A–E.) Experian's headquarters, principal place of business, and NCAC are all located outside of Virginia. (*See* Iwanski Aff. ¶¶ 4–5 (Ex. B).) Similarly, the principal place of business and headquarters of Midland, a nonparty that will nonetheless be critical to resolution of the issues arising in this case, is also located outside of Virginia. (*See* Ex. C (Midland Funding, LLC Company Report).) Plaintiffs' claims and the underlying events (as alleged in the Complaint) have virtually no connection to the Richmond Division. Virtually none of the harm Plaintiffs claim to have suffered would have been incurred in the Richmond Division, and virtually none of Plaintiffs' or Defendants' likely witnesses or documents are located in the Richmond Division.

Plaintiffs may argue the Richmond Division is appropriate because Experian conducts business in the Division, but "it is well-settled that the mere existence of limited sales activity within Virginia does not require this court to give the plaintiff's choice of forum substantial weight[.]" *Lycos, Inc. v. Tivo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007); *see also Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992) ("[W]hen, as here, a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight."); *Cognitornics*, 83 F. Supp. 2d at 696 ("A plaintiff's choice of forum, while usually entitled to substantial weight, is here of little moment because it is neither plaintiff's nor defendants' home forum").

Accordingly, Plaintiffs' choice of venue should be given no deference, and the scarcity of connection between Plaintiffs' claims and the Richmond Division warrants a transfer to the

Northern District of Texas, a venue with more substantial contacts.  *See Koh*, 250 F. Supp. 2d at

635; *BHP Int'l Inv., Inc.*, 105 F. Supp. 2d at 498; *Cogitronics*, 83 F. Supp. 2d at 699–700.

C.     **The Convenience Of The Parties, the Witnesses, And Access To The Sources Of Proof Strongly Favor Transfer.**

"'[T]he party convenience factor includes assessment of the ease of access to sources of

proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory

process.'"  *Byerson*, 467 F. Supp. 2d at 633 (quoting *Samsung*, 386 F. Supp. 2d at 717 n. 13).

And, when evaluating the convenience of the parties, "the logical starting point is a consideration

of the residence of the parties."  *Mullins v. Equifax Info. Services, LLC*, No. 3:05-cv-888, 2006

WL 1214024, at *6 (E.D. Va. Apr. 28, 2006) (*citing U.S. Fidelity & Guaranty Corp. v. Republic

Drug Co., Inc.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992)).

As noted, only two of the five named putative class Plaintiffs reside in the Richmond

Division.  Plaintiffs have provided no basis for concluding that the Richmond Division would be

the slightest bit convenient for the majority of the class they purport to represent.  Accordingly,

the Richmond Division would provide little, if any, convenience to Plaintiffs or to their

purported class.

Also, as noted, Experian is an Ohio corporation with its headquarters and principal place

of business in Costa Mesa, California.  (*See* Iwanski Aff. ¶ 4 (Ex. B).)  Experian's NCAC, the

office that handles nearly all consumer disputes, is located in Allen, Texas.  (*See id.* ¶ 5.).  All

Experian employees with relevant knowledge of Plaintiffs' disputes, Experian's response to their

disputes, and all other actions giving rise to the allegations in Plaintiffs' complaint, reside outside

of Virginia.  (*See id.*)  Moreover, every source of proof in Experian's possession is also located

outside of Virginia.  (*See id.*)  And all the operative events giving rise to Plaintiffs' claims arose

outside of Virginia.  (*See id.*); *see also Murphy v. Trans Union, LLC*, No. 12-499, 2012 U.S.

Dist. LEXIS 115610, at *14–15 (E.D. Pa. Aug. 15, 2012) ("Multiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events . . . is generally the place where the defendant credit reporting agency conducted its business."); *Ayling v. Travelers Prop. Cas. Corp.*, 1999 U.S. Dist. LEXIS 16716, at *16 (E.D. Pa. Oct. 27, 1999) ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred.").

Similarly, all non-party witnesses almost certainly reside outside of Virginia. Plaintiffs allege that transactions between each of them and Midland resulted in the alleged disputes giving rise to claims against Experian. (*See* D.E. 1, ¶¶ 6–10, 13, 16, 19, 22.) None of Midland's witnesses or documents, however, are likely to be found in Virginia; rather, they are likely to be found at Midland's principal place of business, in San Diego, California. Given the geographic centrality of the Northern District of Texas, it is likely that these non-party witnesses will find it much more convenient to travel to that district than across the country to the Richmond Division.

Plaintiffs may argue that Experian would not be inconvenienced if it were forced to litigate in the Richmond Division because it is a corporation with sufficient resources to defend itself in a foreign forum. Such arguments, however, have previously been rejected by this Court. *See JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007) (rejecting corporate resources as a factor to be considered in a transfer analysis). In any event, litigating in the Richmond Division is indeed inconvenient, and the Northern District of Texas is far more convenient in terms of geography and cost. Litigation in the Northern District of Texas would occur near Experian's NCAC. It would also eliminate the need and expenses associated with retaining local counsel in the Richmond Division. *See Mullins*, 2006 WL 1214024, at *6 (noting

that a defendant moving to transfer venue must show that it too is inconvenienced by the forum, not just plaintiff).

*Beverley, et al. v. ChoicePoint, Inc., et al.*, 3:07-cv-541 (E.D. Va.), a putative FRCA class action filed in the Richmond Division, is instructive.  In *Beverly*, Judge Williams granted the defendants' motion to transfer the plaintiffs' putative FCRA class action to North Carolina, because (1) all the operative events concerning ChoicePoint's allegedly-deficient procedures occurred in North Carolina; (2) all relevant ChoicePoint documents were in North Carolina; and (3) the vast majority of non-ChoicePoint witnesses were located outside of the forum.  (*See* Ex. I) (Order Granting Mot. To Transfer, *Beverley, et al. v. ChoicePoint, Inc., et al.*, 3:07-cv-541 (E.D. Va.)).)  Judge Williams found that transfer was appropriate despite the fact that one of the two named plaintiffs resided in Virginia.  (*See* Ex. J (Defs. ChoicePoint Inc.'s And ChoicePoint Workplace Solutions Inc.'s Mem. In Support Of Mot. To Transfer Venue, at pg 2, *Beverley, et al. v. ChoicePoint, Inc., et al.*, 3:07-cv-541 (E.D. Va.)).)

Similarly, in *Klingensmith v. The Paradise Shops, Inc.*, the court transferred a putative national FCRA class action from the Western District of Pennsylvania to the Northern District of Georgia, despite the fact that one of the two named plaintiffs resided in the Western District of Pennsylvania.  In that case, the defendant was headquartered in Atlanta, Georgia, but operated gift shops in airport locations around the United States, including one within the Western District of Pennsylvania.  2007 U.S. Dist. LEXIS 51591, at *2.  The *Klingensmith* court found transfer to be appropriate based on the fact that: (1) the plaintiffs' choice of venue was entitled to less deference because they purported to represent a it was a national class, *id*. at *6; (2) "[t]he focus of the litigation [would] be on [the defendant's] actions, not on any class members' actions," *id*. at *7–8; and (3) the material witnesses and records regarding the issue were in Atlanta.  *Id*. at *8.

For all these reasons, transferring this case to the Northern District of Texas would be more convenient for Plaintiffs' putative national class, for Experian, and for all non-parties that will play a role in the disposition of this case.

### D.    Transferring This Case Serves The Interests Of Justice.

The interests of justice require that this case be transferred to the Northern District of Texas.  Factors courts consider when weighing the interests of justice include "all those factors bearing on transfer" unrelated to witness convenience, party convenience, and plaintiff's choice of forum.  *JTH Tax, Inc.*, 482 F. Supp.2d at 738.  Among these other relevant factors are the ability to join other parties, docket conditions, judicial economy, and whether a party has tried to "game the federal courts through forum manipulation."  *Samsung*, 386 F. Supp. 2d at 721.

Plaintiffs' decision to bring this case in a Division with only the most attenuated connection makes clear the real reason Plaintiffs filed their case in the Richmond Division: Plaintiffs' counsel prefers this forum and will employ any and all necessary tactics to ensure their appearance before this Honorable Court.[5]  Accordingly, the interests of justice command that this Court prevent Plaintiffs from reaping the benefit of their manipulative forum shopping.

Faced with a similar lack of connection with her chosen forum, the plaintiff in *Telepharmacy Solutions* argued that docket considerations favored allowing the matter to proceed in the Eastern District of Virginia, so that the plaintiff could take advantage of the "rocket docket." 238 F. Supp. 2d at 743–44.  A "thorough analysis of [Plaintiff's] arguments

---

[5]  As discussed below, eight of the last nine cases filed in the Richmond Division against TransUnion, another national credit reporting agency, have been presided over by this Honorable Court.  *See Mastrapasqua v. Equifax Information Services, LLC et al.*, 3:12-cv-00743-REP (E.D. Va.); *Boyd v. Equifax Information Services, LLC et al.*, 3:12-cv-00830-REP-MHL (E.D. Va.); *Seeds v. Equifax Information Services, LLC. et al.*, 3:12-cv-00878-REP (E.D. Va.); *Stellings v. Equifax Information Services, LLC et al.*, 3:12-cv-00898-REP (E.D. Va.); *Barklow v. Equifax Information Services, L.L.C. et al.*, 3:12-cv-00695-REP (E.D. Va.); *Crawford v. Bank of America, N.A. et al.*, 3:12-cv-00846-REP-DJN (E.D. Va); *Garrett v. Westlake Services, LLC et al.*, 3:13-cv-00062-REP (E.D. Va.); *Fay v. Bank Of America, N.A., et al.*, 3:13-cv-00085-REP (E.D. Va.).

convince[d] th[e] court that docket considerations [were] the primary reason that" the Plaintiff sought to be heard in the Eastern District of Virginia. *Id*. at 744. The *Telepharmacy Solutions* Court stated emphatically, however, that "[t]he interests of justice *are not served* by such blatant forum shopping," and refused to "stand as a willing repository for cases which have no real nexus to this district." *Id*. (emphasis added) (internal quotations and citations omitted).

This Court should see Plaintiffs' choice of forum for what it is: an attorney's preference. Here, however, Plaintiffs' counsel has not simply chosen to file the Complaint in an inappropriate jurisdiction. Instead, they have erroneously represented that this case is related to one previously presided over by this Court. (*See supra* pgs 4–7; *see also infra* pgs 17–19.) "The interest of justice encompasses public interest factors aimed at systemic integrity and fairness," which "necessarily take[s] account of a party's attempt to game the federal courts through forum manipulation." *Samsung*, 386 F. Supp. 2d at 721. Because "[t]he interests of justice are *not* served by approving the conduct" in which Plaintiffs' counsel has engaged—namely, misrepresenting a related case designation in a Court filing to ensure that their case would end up before their preferred Judge—this Court should transfer this case away from the Richmond Division. *Id*. at 723 (emphasis added).

At an absolute minimum, "location of counsel for the litigant is not entitled to deference in a determination whether the Court should transfer venue." *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) (citations omitted); *see also Original Creatine Patent Co.*, 387 F. Supp. 2d at 568–69 (finding that transfer of venue was warranted; plaintiff's only connection with forum was location of its counsel, only 4% of defendant's allegedly infringing sales had occurred in Virginia, bulk of defendant's documents and witnesses were in New York, litigating in New York would not be less convenient for plaintiff, and interests of justice were

not served by allowing venue choice to be dictated by docket considerations); *Reyes v. Experian Info. Solutions, Inc.*, No. 03-C-3219, 2003 U.S. Dist. LEXIS 17678, at 4 (N.D. Ill. Oct. 2, 2003) ("The location of counsel, however, is of little or no relevance to the analysis under § 1404. A motion to transfer is not determined based upon counsel's convenience."). Moreover, the Richmond Division has virtually no connection to this case and thus should not be forced to expend its judicial resources on it. *See, e.g.*, *Thomas,* 2010 WL 4340108, at *2 (E.D. Va. Oct 22, 2010) (noting that "the interests of justice looms largest among the § 1404(a) factors and it points most definitely to transferring this case" where neither plaintiff, defendants, nor likely witnesses resided in jurisdiction where case was brought).

When balanced against the other § 1404(a) factors, the interests of justice are best served by transferring this case from the Richmond Division. Accordingly, transfer to the Northern District of Texas is appropriate.

## III. ALTERNATIVELY, THIS CASE SHOULD BE REASSIGNED.

Should this Court decide that transfer is not appropriate, Experian respectfully requests that this case be reassigned to a different judge of the Richmond Division. By listing *James v. Encore Capital Group, Inc., et al.*, 3:11-cv-221 (E.D. Va.), as a related case, counsel for Plaintiffs improperly influenced this Division's case assignment process and ensured that this Court would preside over the instant action. Doing so not only deprived Experian of the objectivity inherent in the normal case assignment process, but also was a material misrepresentation by Plaintiffs' counsel to this Court. Accordingly, to deny Plaintiffs' counsel the benefit of their apparent forum shopping, this case should be reassigned.

As noted above, Plaintiffs' counsel listed *James v. Encore Capital Group, Inc., et al.*, 3:11-cv-221 (E.D. Va.), a prior case over which this Court presided, as a "related case." (*See* D.E. 1, Attachment 6 (civil cover sheet).) With the exception of one common named plaintiff,

however, there is absolutely no legal or factual overlap between this case and *James v. Encore Capital Group, Inc., et al.*  (*Compare* Ex. D (Compl., *James v. Encore Capital Group, Inc., et al.*, 3:11-cv-221 (E.D. Va.)) *with* D.E. 1.)  Even if this case shared some semblance of legal or factual similarity with *James v. Encore Capital Group, Inc., et al.*—which it does not—*James v. Encore Capital Group, Inc.*, has been closed since July 2, 2012, more than *six months* before Plaintiffs served Experian with their putative class complaint, which renders that case inappropriate for related case treatment.  (Ex. F (*James v. Encore Capital Group, Inc.* Docket Sheet).)  This ensured that this Court would preside over the Plaintiffs' instant putative class action.  And it was not accidental.

The misleading nature of this related case designation is demonstrated by the fact that Plaintiffs' counsel *ignored* another case—one in which they also served as primary counsel—that involved a separate named Plaintiff in the instant action, but was litigated in a different Eastern District of Virginia Division and in front of a different Eastern District of Virginia Judge.  By ignoring *Boone, et al. v. Encore Capital Group, Inc.* and listing as related *James v. Encore Capital Group, Inc.*, it is clear that Plaintiffs' counsel has either manipulated or caused the Clerk's Office to assign this case to this Court.

Plaintiffs' apparent forum shopping is, however, only the latest step in what appears to be a pattern of improperly influencing or manipulating this Court's case assignment process.  In fact, the eight of the last nine similar FCRA cases filed by Plaintiffs' counsel against TransUnion, another national credit reporting agency, have ended up on this Court's docket.[6]

---

[6] *See Mastrapasqua v. Equifax Information Services, LLC et al.*, 3:12-cv-00743-REP (E.D. Va.); *Boyd v. Equifax Information Services, LLC et al.*, 3:12-cv-00830-REP-MHL (E.D. Va.); *Seeds v. Equifax Information Services, LLC. et al.*, 3:12-cv-00878-REP (E.D. Va.); *Stellings v. Equifax Information Services, LLC et al.*, 3:12-cv-00898-REP (E.D. Va.); *Barklow v. Equifax Information Services, L.L.C. et al.*, 3:12-cv-00695-REP (E.D. Va.); *Crawford v. Bank of America, N.A. et al.*, 3:12-cv-00846-REP-DJN (E.D. Va); *Garrett v. Westlake Services, LLC et al.*, 3:13-cv-00062-REP (E.D. Va.); *Fay v. Bank Of America, N.A., et al.*, 3:13-cv-00085-REP (E.D. Va.).

Although the undersigned concededly lacks familiarity with the intricacies of the Richmond Division's case assignment process, the probability of having a continuous series of similar FCRA cases brought by the *same* plaintiff's attorney against the *same* defendant end up in front of the *same* Judge, seems unlikely absent forum shopping.

This Court should not allow Plaintiffs' counsel to benefit from their manipulation or error. Because "[t]he interests of justice are not served by approving the conduct" in which Plaintiffs' counsel has engaged, *Samsung*, 386 F. Supp. 2d at 721, namely, their "attempt to game the federal courts through forum manipulation," *id*., the interests of justice should compel this Court to remove this case from its docket. Accordingly, should this Court deny Experian's motion to transfer, Experian respectfully requests that this matter be reassigned to a different Judge within the Division.

## <u>CONCLUSION</u>

For the foregoing reasons, Experian respectfully requests that the Court transfer this case to the United States District Court for the Northern District of Texas, under 28 U.S.C. § 1404(a). Alternatively, in the event that this Court denies Experian's motion to transfer, Experian respectfully requests that this case be reassigned to a different Judge in the Richmond Division of the Eastern District of Virginia.

Dated:  March 22, 2013                        Respectfully Submitted,


                                              */s/ Joseph W. Clark*
                                              Joseph W. Clark (VA Bar No. 42664)
                                              Edward M. Wenger (admitted *pro hac vice*)
                                              JONES DAY
                                              51 Louisiana Avenue, N.W.
                                              Washington, DC  20001-2113
                                              Telephone:  (202) 879-3939
                                              Facsimile:  (202) 626-1700
                                              Email:  jwclark@jonesday.com
                                              Email:  emwenger@jonesday.com

                                              *Counsel for Defendant*
                                              *EXPERIAN INFORMATION SOLUTIONS, INC.,*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed with the Court via the CM/ECF system.  The foregoing was served this 22nd day of March, 2013, on the following filing users by the CM/ECF system:

Leonard A. Bennett (VA Bar No. 37523)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone:  757.930.3660
Facsimile:  757.930.3662
Email:  lenbennett@clalegal.com

Matthew J. Erausquin (VA Bar No. 65434)
Janelle E. Mason (VA Bar No. 82389)
Casey S. Nash (VA Bar No. 84261)
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Telephone:  703.273.7770
Facsimile:  888.892.3512
Email:  matt@clalegal.com
Email:  janelle@clalegal.com
Email:  casey@clalegal.com

*Counsel for Plaintiffs*
*GILBERT JAMES, SUSAN CHANDLER,*
*THERESA HOOD, ADEDAYO PETERSON, and*
*JOYCE RIDGLEY, on behalf of*
*themselves and all others similarly situated.*


/s/ Joseph W. Clark
Joseph W. Clark (VA Bar No. 42664)
Edward M. Wenger (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  jwclark@jonesday.com
Email:  emwenger@jonesday.com

*Counsel for Defendant*
*EXPERIAN INFORMATION SOLUTIONS,*
*INC.*